THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE L. CLARK, Defendant-Appellant.

Third District    No. 3—01—0669

Opinion filed December 9, 2002.

---

Kerry J. Bryson, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Danner, State's Attorney, of Lewistown (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GROMETER delivered the opinion of the court:

Following a jury trial in the circuit court of Fulton County, defendant, George L. Clark, was convicted of one count of armed robbery (720 ILCS 5/18—2 (West 2000)) and one count of home invasion (720 ILCS 5/12—11 (West 2000)). Defendant now appeals, alleging three errors. First, he contends that it was error for the State to impeach him with his postarrest silence. Second, he asserts that the State's closing argument was unfairly prejudicial. Third, defendant argues that he is entitled to an additional day of credit for time spent in custody prior to trial. We agree with defendant's first two contentions; hence, we reverse and remand this cause for a new trial. Since we are reversing, the third issue raised by defendant, as it pertains to sentencing, is moot.

■ Before turning to the merits of defendant's arguments, we note that the first two errors defendant asserts have not been properly preserved for appellate review. Defendant claims that the evidence at his trial was closely balanced and asks that we review both claims as plain error. See *People v. Austin*, 328 Ill. App. 3d 798, 807 (2002); 134 Ill. 2d R. 615(a). In the instant case, the evidence was closely balanced.

The evidence against defendant was as follows: (1) the victim identified her attacker as a white male in his forties of about defendant's build; (2) defendant owned a pair of sneakers like those described by the victim; (3) defendant had access to a knife similar to that described by the victim, although her description was incomplete; (4) defendant owned two snap-brim hats, one black and one tan, and the victim described her attacker as wearing a dark, beret-type hat, although she stated at another time it was brown or grey; both hats arguably fit within her two descriptions, and the presence of at least one of them in defendant's home was necessarily coincidental; and (5) one of defendant's fingerprints was recovered from the back of one of the victim's jewelry boxes.

In his defense, defendant presented three alibi witnesses. Their testimony was incomplete; however, their unwillingness to testify to anything more specific speaks to their credibility, as does the fact that none of them were close friends of defendant. Essentially, their testimony, accepted as true, would not conclusively establish that defendant did not commit the robbery; however, it did make this proposition more likely. Regarding the fingerprint, defendant stated that he had previously entered the victim's home, months earlier when he was living across the street from her, looking for money. The victim testified that she was a fastidious cleaner. The print, however, was found on the back of the jewelry box. It is conceivable that she could have missed it, and her cleaning would explain the absence of other prints.

In short, defendant's conviction necessarily involved the rejection of his alibi and his explanation of how his fingerprint got into the victim's house. Thus, issues of credibility abounded in the trial below. Accordingly, we conclude that the evidence in this case was sufficiently close to warrant the application of the plain-error doctrine (see *People v. Aguirre*, 291 Ill. App. 3d 1028, 1035 (1997)), and we will review defendant's two claims of error.

Defendant first claims that it was error for the State to impeach him with his postarrest silence. At trial, the following colloquy ensued between defendant and the State:

"Q. Okay[.] Now, you say you got arrested on August 17th; correct?

A. Correct.

Q. Did you ask anyone why?

A. Yes.

Q. What did they tell you?

A. They told me I was being arrested for armed robbery, home invasion.

Q. Did you ask them when?

A. No.

Q. Any reason why?

A. I figured they would tell me when they were ready for me to know.

Q. Okay. Did you tell them they were wrong?

A. No, I didn't tell them they were wrong.

Q. Why not?

A. Well, it's been my experience as best, [*sic*] little talking I do with the police, the better off I will be. So I didn't talk to them at all."

Defendant asserts that this questioning amounted to error sufficient to warrant a new trial.

■ Initially, we note that federal constitutional law provides no basis for the relief defendant seeks. In *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976), the Supreme Court held that it was a violation of the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) for the State to use a defendant's postarrest, post-*Miranda* silence for impeachment purposes. Reasoning that the *Miranda* warnings carry the implicit assurance that silence will carry no penalty, the Court found that it would be fundamentally unfair to allow a defendant's silence to be used to impeach a defendant's trial testimony. *Doyle*, 426 U.S. at 618, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245. However, in *Fletcher v. Weir*, 455 U.S. 603, 607, 71 L. Ed. 2d 490, 494, 102 S. Ct. 1309, 1312 (1982), the Supreme Court made clear that this prohibition applies only to a defendant's silence occurring after the *Miranda* warnings have been given. Regarding the admissibility of postarrest, pre-*Miranda* silence, the Court left it to the states to fashion their own rules. *Fletcher*, 455 U.S. at 607, 71 L. Ed. 2d at 494, 102 S. Ct. at 1312.

Some states prohibit impeachment by postarrest silence as a matter of state constitutional law. See, *e.g.*, *Nelson v. State*, 691 P.2d 1056, 1059-60 (Alaska App. 1984); *State v. Davis*, 38 Wash. App. 600, 605-06, 686 P.2d 1143, 1145-46 (1984). In Illinois, we exclude such evidence as a matter of Illinois evidentiary law. See, *e.g.*, *People v. Strong*, 215 Ill. App. 3d 484, 488 (1991); *People v. Savory*, 105 Ill. App. 3d 1023, 1031-32 (1982). In *People v. McMullin*, 138 Ill. App. 3d 872, 876-77 (1985), the court made the following observation:

"The Illinois Supreme Court has held that evidence of a defendant's post-arrest silence is inadmissible because such evidence is neither material nor relevant, having no tendency to prove or disprove the charge against a defendant. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 299; *People v. Rothe* (1934), 358 Ill. 52, 57.) From the language used by the court in these cases, the language of 'materiality' and 'relevancy,' it is apparent they are based on general evidentiary principles. (*People v. Savory* (1982), 105 Ill. App. 3d 1023, 1031, 435 N.E.2d 226, 232) Because these decisions predate *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and in view of their rationale, it is also apparent that the rule they set forth does not depend upon whether the silence sought to be utilized occurred before or after a defendant was given *Miranda* warnings. (*People v. Savory* (1982), 105 Ill. App. 3d 1023, 1031-32, 435 N.E.2d 226, 233; *cf. Jenkins v. Anderson* (1980), 447 U.S. 231, 239, 65 L. Ed. 2d 86, 95, 100 S. Ct. 2124, 2129 (Federal constitutional rule that a defendant's post-arrest silence is inadmissible applies only after defendant has been given *Miranda* warnings).) Because the rule of *Rothe* and *Lewerenz* is rooted in Illinois evidentiary law, it is unaltered by the Federal constitutional case law with respect to the use of Miranda-warning-induced silence. (*Fletcher v. Weir* (1982), 455 U.S. 603, 607, 71 L. Ed. 2d 490, 494, 102 S. Ct. 1309, 1312 (in the absence of assurances such as those in the *Miranda* warnings, '[a] State is entitled *** to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony').) *Rothe* and *Lewerenz* have never been overruled by our supreme court, so we are bound to follow the rule they set forth."

In light of these authorities, it is clear that, under Illinois evidentiary law, it is impermissible to impeach a defendant with his or her post-arrest silence, regardless of whether the silence occurred before or after the defendant was given *Miranda* warnings.

■ In the present case, the information solicited by the State regarding defendant's postarrest silence was inadmissible. That the record contains no indication that defendant was given *Miranda* warnings prior to the time referred to in the State's questioning is irrelevant under the law of this state. Accordingly, we conclude that this questioning by the State constituted error.

In its brief, the State relies on *People v. Aquino*, 239 Ill. App. 3d 12 (1992). *Aquino* analyzed the defendant's failure to give an exculpatory story prior to trial as a potential *Doyle* violation. *Aquino*, 239 Ill. App. 3d at 15-18. *Aquino* did not consider the issue under principles of Illinois evidentiary law. Accordingly, *Aquino* provides no guidance here.

■ Defendant also contends that the State's closing argument was unfairly prejudicial. Defendant cites numerous examples of what he characterizes as attempts to inflame the passions of the jury. He also points out portions of the argument that, he contends, were not supported by the evidence adduced at trial. It is true that counsel have wide latitude in making their closing arguments. *People v. Cisewski*, 118 Ill. 2d 163, 175 (1987). However, remarks must be confined to the facts in evidence. *People v. Alksnis*, 291 Ill. App. 3d 347, 358 (1997); *People v. Fletcher*, 156 Ill. App. 3d 405, 411 (1987) ("[I]t is always improper for a prosecutor in his argument to attempt to get before the jury matters not in evidence"). Further, "a prosecutor is prohibited from making comments which are calculated solely to arouse the prejudice and inflame the passions of the jury." *People v. McCollum*, 239 Ill. App. 3d 593, 598 (1992). In fact, a "prosecutor has an ethical obligation to refrain from presenting improper and prejudicial argument." *People v. Dunsworth*, 233 Ill. App. 3d 258, 269 (1992). Improper remarks during closing argument may constitute reversible error if they substantially prejudice the defendant or serve no purpose besides inflaming the passions of the jury. *People v. Slabaugh*, 323 Ill. App. 3d 723, 731 (2001), quoting *People v. Harris*, 228 Ill. App. 3d 204, 209 (1992) ("[I]t is error for the State to say anything the only effect of which is to arouse the prejudice and passion of the jury without shedding any light on the 'paramount question presented to the jury' "); *People v. Aguirre*, 291 Ill. App. 3d 1028, 1035 (1997). Finally, when the closing argument of a prosecutor contains numerous improper remarks, a court of review may consider their cumulative impact rather than the effect of each such remark in isolation. *People v. Whitlow*, 89 Ill. 2d 322, 341 (1982).

Defendant's most significant complaint about the State's closing argument is that the State repeatedly commented upon the age of the victim. The first group of comments defendant complains of consisted of the following:

> "This case is particularly disgusting in that America has had a tradition of trying to gently treat our elderly. Mrs. Homer told you she was born in 1919. What is she—81 years old?
>
> Do our 81-year old [*sic*] citizens deserve the protection of the criminal justice system? I submit to you that they do. If we don't protect our elderly; [*sic*] who do we protect?
>
> * * *
>
> Whether its $15 or $20 or a lousy quarter, no one was entitled to her money that night, not that 80-year widow [*sic*]."

Shortly thereafter, the prosecutor made the following statement:

> "There is no reasonable doubt in this case that Lena Homer,

born in 1919, an 80-year old plus [*sic*] widow, was absolutely the victim of both an armed robbery and a home invasion on August 13, 2000."

The State also said:

"But if you're a cowardly armed robbery [*sic*] or a cowardly home invader, what better of a target to pick? What real expectation do you have that you're going to get hurt picking on an 80-year old [*sic*] widow woman?"

Finally, defendant complains of the following remark:

"I trust and have faith in you that you're going to recognize the quality of proof introduced in this trial, and that you're going to see that a person who breaks into an 80-year old [*sic*] widow's house is found to be what he is—a criminal."

These comments went far beyond the bounds of acceptable argument.

■ We see no possible purpose to these comments other than to inflame the passions of the jury. The State attempts to characterize these comments as mere reference to the victim's age. We find this characterization ill-taken. Far from mere references to the victim's age, the State repeatedly asserted that the elderly were a class in need of protection. In essence, the State argued that the victim was a member of a class with which we, as a society, are sympathetic and that the defendant should be convicted because of the need to protect this class.

In *Fletcher*, 156 Ill. App. 3d 405, the First District confronted a situation very similar to the instant case. In *Fletcher*, the State made the following argument:

" 'You have two choices when you go in the back, guilty and not guilty. You can find him guilty because we have proven him so through all the testimony, we have proven him guilty beyond a reasonable doubt. Or you can apply some of the things that the Defense Counsel tried to tell you. You could find him not guilty and declare open season for child molesters.

MS. PANTLE [defense counsel]: Objection.

THE COURT: Sustained, sustained. The jury is instructed to disregard that statement.

MR. LOEB [Assistant State's Attorney]: (Continuing.) If you want to find him not guilty because that was a, just a seven year old testifying, you can do so. But in doing so, you are saying that a seven year old's testimony can never convict a defendant.

MS. PANTLE: Objection, Judge. That is a misstatement.

THE COURT: The objection is sustained. The jury is instructed to disregard that statement.

MR. LOEB: You would be saying, oh, let's let him off because maybe the family didn't like him. Sure, encourage potential sex offenders to abuse families.

MS. PANTLE: Objection, Judge.

THE COURT: The objection is sustained. You are to base your decision, ladies and gentlemen, on the evidence and the law in front of you. Proceed.' " *Fletcher*, 156 Ill. App. 3d at 410.

The *Fletcher* court held that these comments were improper in that they were not based on evidence, represented the opinions of the prosecutor, and were designed solely to inflame the jury. *Fletcher*, 156 Ill. App. 3d at 411. As in the present case, the prosecutor in *Fletcher* emphasized that the victim was a member of a class that society regards as vulnerable. Further, as in the instant case, the remarks at issue suggested a need to protect the class. We, like the *Fletcher* court, find such argument improper. See also *People v. Young*, 33 Ill. App. 3d 443, 445-46 (1975) (holding that the State's argument that the victim of a theft was a "little person like you and me" was an improper attempt to win the sympathy of the jury and thus unfairly prejudicial to the defendant).

■ Defendant next complains that the State, in its argument, attacked his own credibility and that of two of his alibi witnesses by pointing out that they spent time in bars. Specifically, defendant complains of the following comment directed toward him:

"George Clark apparently seems to be a person who goes to taverns from time to time. Even on his own account, which I submit to you is not credible, two taverns that one day; and what did he tell you?"

Regarding his alibi witnesses, defendant directs our attention to this remark:

"And of course, the testimony was pretty clear that they were in at Josie's [bar] having a couple of drinks, so throw that in for what its worth."

The State points out that these comments were based on evidence adduced at trial. We do not dispute this observation; however, we fail to see the relevance of this argument. There was no evidence presented at trial that would suggest that defendant or his alibi witnesses were intoxicated or impaired in their ability to recall events. The only apparent purpose the State had in making these remarks was to suggest that people who go to taverns are in some way unsavory and unworthy of belief. While a prosecutor may draw reasonable inferences from the evidence (*People v. Simmons*, 331 Ill. App. 3d 416, 421 (2002)), the inference that the State attempted to draw here is not a reasonable one (see *People v. Glasco*, 66 Ill. App. 2d 445, 450-51 (1966)). We find these remarks improper as well.

■ Defendant additionally complains of the State's comment that "something else would have likely happened out of this incident if [the

victim] would have been, [*sic*] opened her eyes and looked up at her attacker." The State counters that this comment was based on the evidence since the victim testified that her attacker had a knife and could have cut her throat. She also added that she did not know what her attacker would do. While this argument was arguably based on the evidence, it served no purpose other than to inflame the passion of the jury. That her attacker may have committed another crime is not probative as to whether defendant committed the crimes he was charged with. Accordingly, this comment was also improper.

■ We find defendant's final two claims of error unpersuasive. First, defendant argues that the State's assertion that he changed his appearance by growing a beard prior to trial was error. Defendant did, in fact, change his appearance. Thus, the State's inference was legitimate and based on the evidence. This inference was also relevant, in that it arguably indicated a consciousness of guilt on defendant's part. Moreover, defendant explained the reason for this change—the difficulty in obtaining razors in prison, and the jury was able to consider his explanation.

■ Second, defendant complains of the State's contention that, even if his alibi was true, sufficient time existed for defendant to have committed the robbery. Defendant asserts that the State's contention was not based on evidence. The State argued that there was a 15- to 20-minute gap in the alibi. Defendant points out that there was no testimony regarding whether defendant could have traveled to the victim's home and perpetrated the crime in this time frame. The State's observation was based on the evidence, as one could infer that this gap existed. Defendant was free to point out the holes in this theory. Moreover, we see nothing inflammatory about this argument.

■ Finally, we conclude that the errors set forth above warrant a reversal and a remand for a new trial. We need not decide whether any of the errors, in themselves, are sufficiently prejudicial to require that we reverse. In determining whether defendant was denied a fair trial, we may consider the cumulative effect of the errors that occurred. *People v. Abadia*, 328 Ill. App. 3d 669, 684 (2001). In the present case, defendant's conviction turned, in part, upon the rejection of his alibi defense and his explanation of how his fingerprint got into the victim's home. Thus, defendant's credibility was at issue, and he was improperly impeached by his silence following his arrest. Further, the credibility of both defendant and two of his alibi witnesses was improperly attacked with the statement made in closing argument that they frequented bars. The jury was thus left to consider the truthfulness of their testimony in light of irrelevant matters. Additionally, the jury's evaluation was likely colored by the inflammatory

nature of the State's closing argument, particularly insofar as it evoked sympathy for the victim based on her age, urged the jury to convict defendant to protect the elderly, and intimated a potential that defendant would have committed further, and more violent, crimes. We have no difficulty in concluding that these errors were prejudicial and that defendant was denied a fair trial.

We also note that defendant does not challenge the sufficiency of the evidence upon which his convictions rest. Given the record, this is understandable. Viewing the evidence in the light most favorable to the State (see *People v. Manning*, 182 Ill. 2d 193, 209-10 (1998)), a rational trier of fact could have found him guilty beyond a reasonable doubt (see *People v. Zizzo*, 301 Ill. App. 3d 481, 489-90 (1998)). Hence, double jeopardy does not attach, and defendant may be retried. *People v. Denny*, 221 Ill. App. 3d 298, 303 (1991).

██ In light of the foregoing, the decision of the circuit court of Fulton County is reversed, and this cause is remanded for a new trial. Before closing, we remind defense counsel of the requirement that all authority be referenced with a pinpoint citation. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(d) (eff. October 1, 2001); 145 Ill. 2d R. 6.

Reversed and remanded.

McLAREN and CALLUM, JJ., concur.