**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250138-U

Order filed November 25, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0138 Circuit No. 21-CF-741 |
| JACKIE NUNN JR., | ) ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The State proved defendant guilty of domestic battery beyond a reasonable doubt. (2) The court did not err in sentencing defendant.

¶ 2    Defendant, Jackie Nunn Jr., appeals his conviction for domestic battery. First, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Second, defendant contends that the Kankakee County circuit court improperly considered his prior domestic battery convictions in aggravation at sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On November 5, 2021, the State charged defendant with domestic battery, a Class 2 felony (720 ILCS 5/12-3.2(a)(1), (b) (West 2020)). The charge alleged that on or about October 10, 2021, defendant intentionally caused bodily harm to Lakreasha Phillips, a former girlfriend, when he scratched her face with his hands, and he had four or more prior domestic battery convictions. On October 1, 2024, the matter proceeded to a bench trial.

¶ 5          Phillips testified that on October 10, 2021, she hosted a party at her apartment. Phillips stated she and defendant had a child together, but at that time they were no longer in a relationship. Defendant attended Phillips's party with several other friends of Phillips. After her friends left, defendant "jumped on" Phillips, holding her down and "put[ ] his hands on [her], fighting [her]." Defendant told Phillips she was "always going to be *** his." Defendant "held [her] down and started choking [her] and scratching [her] face." Phillips contacted the police early the next morning and completed a written statement. Photographs taken by the police showed visible scratches and blood on Phillips's face, including her nose, under her eye, and on her cheeks. Phillips was the victim of three other domestic battery offenses attributed to defendant, resulting in convictions. In those instances, defendant hit Phillips in the face with his hands.

¶ 6          On cross-examination, when asked if Phillips indicated previously that defendant had strangled her, she responded "[t]his is all one thing. It is not in that [written] statement, but he has done it before." Phillips agreed that the photographs did not show marks or injuries on her neck. Phillips indicated that she was intoxicated the night of her party.

¶ 7          Defendant testified that he was at Phillips's party, where there was "a[n] altercation" and he "had a few words" with Phillips before he "rushed to run out the door." Defendant stated that Phillips "had a boyfriend that stopped her from hitting" him. Defendant denied inflicting the

2

injuries observed on Phillips's face and said that Phillips told him the scratches were from being "jumped" by "some girls." Defendant denied strangling Phillips.

¶ 8 On cross-examination, defendant stated that he was not angry to see Phillips's boyfriend because they were "actually friends" and "close." Defendant did not ask who caused Phillips's injuries because he "was under the impression that she was going to tell the truth, but [they had] been having like family difficulties out there to the point a person feel like they got to do whatever they got to do *** to get [him] out of the way."

¶ 9 When issuing its ruling, the court stated,

> "I've examined the photographs, and I do find that they offer corroborative evidence of what Miss Phillips had to say. I did look at the [certified convictions] and considered those. However, I did not put a ton of weight into that, because at the end of the day if Miss Phillips was not believable, then those [certified convictions] don't matter if they were worth anything. I would call them slightly corroborative, but not essential to the Court's decision."

The court found defendant guilty and denied defendant's motion for a new trial.

¶ 10 Defendant's presentence investigation report (PSI) showed prior juvenile adjudications for retail theft, criminal sexual abuse, resisting arrest, aggravated unlawful use of a weapon, and burglary. The PSI showed prior adult convictions for failing to register as a sex offender in 2010, three domestic battery convictions in 2012, two domestic battery convictions and violating an order of protection in 2013, domestic battery in 2016, unlawful possession of cannabis with intent to deliver in 2017, and unlawful possession of a controlled substance in 2020. Defendant was raised by his mother, and his father was not present during his childhood. As a child, defendant "got involved in trouble" with "neighborhood kids." Defendant reported that he had a good

relationship with his two children. Defendant had not been employed since 2023 and did not complete high school due to his delinquency. Defendant began using alcohol at the age of 15 and used Xanax, marijuana, ecstasy, and cocaine during adulthood. Defendant felt he would benefit from substance abuse treatment. Defendant's Department of Corrections disciplinary records included in the PSI showed a lengthy history of violating department rules while incarcerated.

¶ 11 At the sentencing hearing, the court addressed defendant's prior domestic battery convictions, and stated, "What I want to avoid is some type of double enhancement" or "potential for a double enhancement." Defendant made a statement in allocution, asking the court to consider his children and impose a shorter sentence. Prior to imposing a sentence, the court stated that it considered the PSI, evidence at sentencing, defendant's statement in allocution, facts from trial, arguments, statutory and nonstatutory factors in aggravation and mitigation "whether specifically mentioned or not," and the history and character of defendant. The court continued stating, "[h]aving due regard for the seriousness of the offense and with the objective of restoring the defendant to useful citizenship" it noted that defendant had "a history of prior delinquency or criminal activity" beginning as a juvenile and continuing into adulthood. The court recited defendant's prior convictions, then stated, "there are six prior felony convictions as an adult, two adjudications as a juvenile, and those prior domestics. So that's certainly a factor that weighs heavily here in the Court's sentencing decision." The court considered deterrence as a factor and noted defendant's extended-term eligibility "because of the prior Class 2." Finally, the court stated, "in terms of nonstatutory aggravation, *** I can't ignore the fact that *** all these domestics have apparently involved the same victim, which is certainly troubling."

¶ 12 In mitigation, the court discussed defendant's troubled childhood, lack of a consistent father figure, request for substance abuse treatment, and defendant's presence in the lives of his

two children. The court concluded, "I am finding that imprisonment is necessary in this case for the protection of the public, and additionally, that probation or conditional discharge would deprecate the seriousness of the offense and be inconsistent with the ends of justice."

¶ 13    The court sentenced defendant to seven years' imprisonment. The court stated, "[t]hat is not extended-term" and that it "believe[ed] that to be the appropriate sentence regardless of whether the defendant is extended-term eligible or not. If this was not an extended-term-eligible case, that would be the sentence. If it was, and I believe that it is, that's still the sentence." Defendant filed a motion to reconsider sentence, arguing that the court imposed an excessive sentence given the lack of harm caused to Phillips. Later, defendant withdrew the motion, and counsel indicated that defendant "was satisfied with the sentence." Defendant appealed.

¶ 14                                II. ANALYSIS

¶ 15                         A. Sufficiency of the Evidence

¶ 16    On appeal, defendant first alleges that the State failed to prove him guilty of domestic battery beyond a reasonable doubt. Specifically, defendant asserts that the court erred in finding Phillips's testimony credible in light of her impeachment and defendant's credible testimony.

¶ 17    When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Thus, we afford great deference to the trier of fact, "to determine the credibility of witnesses, to

5

weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not retry a defendant and must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 18    To prove defendant guilty of domestic battery, the State had to establish that defendant knowingly, without legal justification, made physical contact by using his hands to scratch Phillips's face, a former domestic partner, resulting in bodily harm, and had four prior domestic battery convictions. See 720 ILCS 5/12-3.2(a)(1), (b) (West 2020).

¶ 19    Here, Phillips testified consistently that defendant scratched her face, which was corroborated by her written statement and the photographs taken shortly after the incident showing injuries consistent with being scratched. Importantly, the court found Phillips credible. The court compared Phillips's and defendant's testimony and characterized Phillips as "believable." Though defendant offered the court an alternative version of what caused Phillips's injuries, the court was not required to believe his testimony. See *People v. Spaulding*, 68 Ill. App. 3d 663, 675 (1979) ("the trier of fact is free to believe part of one's testimony without believing all of it"); see also *Siguenza-Brito*, 235 Ill. 2d at 228 ("the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant"). Moreover, it was the court's duty as the trier of fact to weigh any potential impeachment regarding choking and resolve possible conflicts this fact caused with other evidence presented. See *Siguenza-Brito*, 235 Ill. 2d at 228; see also *Jackson*, 232 Ill. 2d at 280-81. It cannot be said that the trial court's credibility determinations here were irrational. See *Jackson*, 232 Ill. 2d at 280-81; see also *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007) (because the trier of fact is best equipped to determine the credibility of a witness, we afford great deference to such credibility determinations unless the determination is

6

unreasonable). Therefore, taken in the light most favorable to the State, sufficient evidence was presented to sustain defendant's conviction for domestic battery.

¶ 20                                           B. Sentencing Error

¶ 21        Next, defendant contends that the court improperly considered his prior domestic battery convictions as a factor in aggravation when imposing his sentence, resulting in a double enhancement. Defendant concedes that he forfeited this contention but asks that we consider counsel's ineffectiveness for failing to raise the issue in a postsentencing motion or consider the issue under the plain error doctrine. Under either theory, we first must consider whether an error occurred as "[a]bsent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 22        The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The circuit court has wide latitude in sentencing a defendant to any term prescribed by statute, "[a]s long as the court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Relevant sentencing considerations include the nature of the crime, the public's protection, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight that the court should attribute to any factors in aggravation and mitigation depends on the particular circumstances of the case. *Id.* We review the circuit court's sentencing determination for an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). We will find an abuse of discretion only where the court's ruling is "arbitrary, fanciful, unreasonable, or where no reasonable person

7

would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000). We will not disturb a sentence within the applicable sentencing range unless the circuit court abused its discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 23        At the outset, we note that the nonextended-term sentencing range for a Class 2 felony of domestic battery is 3 to 7 years' imprisonment and the extended-term sentencing range is 7 to 14 years' imprisonment. See 720 ILCS 5/12-3.2(a)(1), (b) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020). Notwithstanding that defendant was eligible for an extended-term sentence, the court did not impose an extended-term sentence; the seven-year sentence imposed is within the statutory range. Therefore, the sentence is presumptively valid, and defendant bears the burden of rebutting this presumption. See *People v. Busse*, 2016 IL App (1st) 142941, ¶¶ 22, 27.

¶ 24        In the present case, the court properly considered the factors in aggravation and did not impose a double enhancement. Notably, before the start of the sentencing hearing, the court specifically identified the possible risk of a double enhancement and its intention to avoid the imposition of such a sentence. The court considered defendant's lengthy criminal history as a whole when determining defendant's "prospect for rehabilitation and restoration to a useful place in society." *People v. Ward*, 113 Ill. 2d 516, 529 (1986). In doing so, the court expressly identified defendant's felony criminal history before indicating that defendant's general delinquency "weigh[ed] heavily" in its decision. See *People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009) (criminal history alone may "warrant sentences substantially above the minimum"). In other words, the court noted defendant's substantial criminal history and mentioned the prior domestic battery offenses in passing. See *People v. Bourke*, 96 Ill. 2d 327, 330, 333 (1983). Additionally, the court's observation that Phillips was the victim in defendant's prior domestic battery offenses was not error contributing to a double enhancement since Phillips's involvement is not an element

8

of domestic battery or a basis for felony enhancement. See *cf.* 720 ILCS 5/12-3.2(a)(1), (b) (West 2020). Rather, the court properly considered Phillips' safety when rendering defendant's sentence. See *Kolzow*, 301 Ill. App. 3d at 8.

¶ 25      Read as a whole, the record demonstrates that the court properly considered defendant's criminal history in conjunction with the circumstances of the offense, the evidence presented at trial, and the other aggravating and mitigating evidence. Thus, we find that the court's passing to defendant's domestic violence history did not establish that it considered an improper sentencing factor. See *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007); *Bourke*, 96 Ill. 2d at 330, 333.

¶ 26                          III. CONCLUSION

¶ 27      The judgment of the circuit court of Kankakee County is affirmed.

¶ 28      Affirmed.